IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dennis Rubel,                                                       Case No. 3:07CV2659

        Plaintiff

   v.                                                                    ORDER

Lowe's Home Centers, Inc.,

        Defendant

    This is a motion to enforce a settlement agreement stemming from a personal injury suit. Plaintiff Dennis Rubel's former attorney Michael Dzienny entered into a settlement agreement with Defendant Lowe's Home Center Inc.'s [Lowe's] for injuries Rubel suffered while working at defendant's Findlay, Ohio store. Rubel asserts that Dzienny did not have authority to accept Lowe's settlement offer, and thus, the settlement is unenforceable.

    Pending is Lowe's' motion for summary judgment seeking enforcement of the settlement agreement [Doc. 38]. Jurisdiction arises under 28 U.S.C. § 1332 and 28 U.S.C. § 1367. For the reasons discussed below, I shall grant Lowe's' motion.

1

**Background**

On January 20, 2003, while Rubel was working at Lowe's, another employee "knocked a fifty pound box off of a shelf striking [Rubel] in the neck and the back of his head thereby causing permanent injuries." [Doc. 19].

Rubel filed suit against Lowe's in the Lucas County, Ohio, Court of Common Pleas on November 18, 2004, which the court then transferred to the Hancock County, Ohio, Court of Common Pleas.

During pre-trial proceedings, Rubel authorized his attorney, Dzienny, to enter into settlement negotiations with Lowe's. At some point before June 14, 2006, Dzienny and Rubel met and spoke about the upcoming negotiations; Dzienny left with the impression that Rubel wanted him to get "the best that he could get on this case." [Doc. 38, Exh. 8]. Between this meeting and June 14, 2006, Rubel did nothing to alter Dzienny's impression. [*Id.*].

On June 14, 2006, without Rubel present, Dzienny settled Rubel's case for $21,000 in exchange for his release of all claims against Lowe's. To confirm their agreement, Dzienny faxed the following statement to Lowe's' attorneys:

Dear Mr. Spitz:

    Mr. Rubel will accept your Twenty-one Thousand Dollar ($21,000.00) offer to settle his claim. Please forward a check and release to my attention made payable to Mr. Rubel and myself. Mr. Rubel is single and I would expect that the Defense will pay the court costs as is customary. Thank you for your assistance in bringing this matter to a resolution at this time.

Sincerely,
s/Michael Dzienny
Michael A. Dzienny

[Doc. 17, Ex. 1].

On June 29, 2006, Lowe's sent Dzienny the release, proposed dismissal entry and a settlement draft for $21,000. Rubel, however, refused to sign the release, claiming that Dzienny lacked authority to settle his case.

On August 7, 2006, Rubel filed a notice of dismissal without prejudice, and on August 1, 2007, refiled his case in the Hancock County, Ohio, Court of Common Pleas. On August 31, 2007, Lowe's removed the case to this court.

On September 4, 2007, Lowe's filed a motion to enforce the settlement agreement [Doc. 5]. Rubel, in his affidavit and amended opposition to Lowe's' motion, stated that he never, expressly or impliedly, authorized Dzienny to "accept a settlement on his behalf" or "accept $21,000.00 as settlement of his claims against [Lowe's]." [Doc. 19]. Rubel testified similarly in his deposition, although he admitted that he provided Dzienny with "authorization to negotiate a settlement." [Doc.41, Exh. 2].

On March 6, 2008, I denied Lowe's' motion to enforce the settlement agreement without prejudice, allowing Lowe's to refile after completing further discovery. [Doc. 24].

During discovery, on May 21, 2008, I issued a subpoena ordering Dzienny to appear and be deposed. Dzienny asserted the attorney-client privilege and refused to testify. In response, Lowe's' filed a motion to compel Dzienny's testimony [Doc. 29], which I granted. [Doc. 34].

On November 7, 2008, after I became involved once again, Dzienny finally complied with my order, and Lowe's' counsel deposed him.

On December 15, 2008, Lowe's filed the pending motion for summary judgment. [Doc. 38].

**Standard of Review**

The moving party is entitled to a judgment as a matter of law where the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (Emphasis in original).

In considering Lowe's' motion, I must accept Rubel's evidence as true and draw all reasonable inferences in his favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If, as the nonmoving party, Rubel fails to make a sufficient showing on an essential element of his case, Lowe's is entitled to summary judgment as a matter of law. *See id.*

**Discussion**

Under Ohio law, "[a]n agent, acting within the scope of his actual authority, expressly or impliedly conferred, can bind the principal." *Damon's Missouri, Inc. v. Davis*, 63 Ohio St.3d 605, 608 (1992). Because the relationship of attorney to client is that of agent to principal, *Gaines Reporting Serv. v. Mack*, 4 Ohio App.3d 234, 234 (1982), an authorized attorney may settle claims on his client's behalf. *Morr v. Crouch*, 19 Ohio St.2d 24, 27 (1969).

Conversely, an unauthorized attorney cannot bind his client to a settlement agreement. *See id.* (noting that an attorney is not authorized solely "by virtue of his general retainer to compromise and settle his client's claim or cause of action"); *Miller v. Wick Bldg. Co.*, 154 Ohio St. 93, 93

(1950) (explaining that to enforce a contract entered into by an agent, "it is necessary to establish that the one who assumed to act as agent for that party had power to make the contract for that party.").

Here, Rubel disputes the enforceability of the settlement agreement, arguing that he never authorized Dzienny to settle his case. Lowe's contends that the settlement is enforceable because when Rubel directed Dzienny to "get the best he could," he authorized Dzienny to settle his case for $21,000.

I agree with Lowe's. Alternatively, I find the settlement to be enforceable because Rubel authorized Dzienny to enter into settlement negotiations, which is legally sufficient to bind Rubel to the final contract.

### 1. Actual Authority To Settle Case For $21,000

When a client "directly" conveys authority to his attorney to act, using "express terms," the client grants his attorney actual, express authority. *Damon's Missouri, supra*, 63 Ohio St.3d at 608. A client's provision of express authority also gives his attorney implied authority to do anything "reasonably necessary to carry into effect the power actually conferred." *Id*. Thus, a determination of whether an attorney has authorization to settle his client's claim "may be ascertained from the surrounding circumstances." *Elliot v. General Motors Corp.*, 72 Ohio App.3d 486, 488 (1991).

To determine whether Rubel authorized Dzienny to settle his personal injury lawsuit for $21,000, I must examine manifestations of authority conveyed by Rubel to Dzienny. *See Zona v. Lincoln Log Homes, Inc.*, 1999 WL 282666, *4 (6th Cir.) (unpublished disposition). I find that Rubel granted Dzienny with express, actual authority to enter into a binding settlement agreement.

My analysis focuses on two statements: 1) Rubel's admission in his deposition that he authorized Dzienny to enter into settlement negotiations with Lowe's; and 2) Dzienny's deposition testimony that Rubel directed him to "get the best he could" during settlement negotiations.

Rubel's general directive to "get the best he could" constituted an anticipatory acceptance to the terms and conditions ultimately negotiated by Dzienny. Rubel did not attach conditions or limitations on his statement; instead, he authorized Dzienny to settle the case for an unspecified, to-be-determined amount of money.

Other courts have found statements of equal generality to constitute actual authorization in similar contexts. In *Servenack v. Sturgeon*, 2001 WL 1667877, \*2 (Ohio App Ct.), the court found a settlement agreement to be a binding contract based on a client's instruction to do "whatever you think is best" to his attorney. Likewise, in *Pohl v. United Airlines, Inc.*, 110 F.Supp.2d 829, 839 (S.D.Ind.1999), the court found that under Indiana law, a client's statement to "settle the case" to constituted actual authority.

Rubel argues that he "did not give Michael Dzienny authority either express or implied to accept" the $21,000 settlement offer. [Doc. 19]. This conclusory statement focuses on the validity of the settlement instead of his specific words of authorization.

Rubel, further, failed to submit a supplemental affidavit disputing Dzienny's deposition testimony as to their conversation. As such, I find Dzienny's testimony to stand unrebutted. *See Helman v. Thomas*, 2001 WL 1280419, \*2 (Ohio App. Ct. 2001) (finding that because client offered "no evidence to dispute her former attorney's testimony that he believed he had [client's] express authority to settle the case on the terms contained in the settlement agreement," the trial court

6

correctly determined that the attorney had authorization to settle based on the attorney's undetailed testimony).

Rubel also contends that he never consented to the precise figure of $21,000 as the settlement price. Again, this argument is off the mark. An attorney can enter into a contract on behalf of a client after the client either consents to the contract's terms *or* grants the attorney authority to act. Where a client authorizes an attorney to "get the best he can," or other sort of anticipatory acceptance, the client enables the attorney to exercise his best discretion and judgment, and expresses a willingness to abide by his attorney's outcome.

Once an attorney is authorized, there is no precedent outside of the land-sales context requiring an attorney to confirm his client's willingness to accept a specific figure before entering into a binding settlement agreement. *Cf. Morr, supra*, 19 Ohio St.2d at 27 (land sales context).

Because I find the overwhelming weight of the evidence to support Lowe's' position that the two parties reached an enforceable settlement on June 14, 2006, I grant defendant's motion for summary judgment.

Alternatively, even I concluded that Rubel's statement did not constitute express authorization, Dzienny's action would be permissible as actual implied authority. To effectuate his authorized tasks of negotiating a settlement and getting "the best" settlement deal, Dzienny needed to enter into a settlement agreement. From the circumstances, I find Rubel's express authorization to implicitly authorize Dzienny to contract on Rubel's behalf. *See Jackson v. Kelly*, 1995 WL 442496, *2 (Ohio App. Ct. 1995) (concluding based on the circumstances that the attorney would have recommended settlement and plaintiffs would have accepted the advice).

**2. Actual Authority To Enter Into Settlement Negotiations**

If an attorney settles a client's claims without his client's authorization to discuss settlement with opposing counsel, the settlement is unenforceable. *See Morr, supra*, 19 Ohio St.2d at 29. However, if a client authorizing his attorney to negotiate a settlement, but then the attorney "settles the client's claims on terms unacceptable to the client, such a settlement is enforceable despite the client's lack of consent."*Patel v. Lowes Home Centers, Inc.*, 2007 WL 544049, *6 (S.D.Ohio 2007); *See Kraras v. Safeskin Corp*, 2004 WL 2375525, *8 (S.D.Ohio 2004) (holding that by retaining attorneys and authorized them to enter into settlement negotiations, the attorneys "had authority to bind [client] to a specific sum even if she did not agree to that settlement."); *Argo Plastic Products Co. v. City of Cleveland*, 15 Ohio St.3d 389, 392 (1984) (finding a $500,000 settlement to be enforceable because the city authorized its attorney to negotiate the city's claims, although the city only authorized a $2,500 settlement). In these circumstances, if the client is dissatisfied, his only remedy is an action against his attorney for professional malpractice. *See id.*

Here, Rubel indisputably authorized Dzienny to enter into settlement negotiations. Thus, he cannot invalidate the agreement at this point. *See Mollis v. Rox Const. Co., Inc*., 1992 WL 361438, *3-4 (Ohio App. Ct.) (finding that even if the attorney exceeded her settlement authority, the settlement was correctly imputed to her clients).

In *Patel, supra*, 2007 WL 544049, at * 6, a client authorized her attorney to enter into settlement negotiations, but the client expressly instructed her attorney to return with defendant's offer so she could "consider the proposal once she saw it in writing." *Id*. Her attorney disregarded this instruction and settled the suit; still, the court found the settlement agreement to be binding.

Like the client in *Patel*, Rubel authorized his attorney to enter settlement negotiations. The court in *Patel* goes even further that necessary here, however, as there is no evidence that Dzienny acted against Rubel's express wishes.

For these reasons, I conclude, as a matter of law, that the settlement agreement is enforceable.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendant Lowe's Home Centers' motion for summary judgment [Doc. 38] be, and the same hereby is granted.

So ordered.

    s/ James G. Carr
    James G. Carr
    Chief Judge